# Mt. Vernon Lumber Co. *v.* Shepard, *et al.*

## *Bill to Enforce Timber Rights in Land.*

(Decided January. 17, 1913.   60 South. 825.)

1. *Logs and Logging; Sale of Standing Timber; Contract; Construction.*—The contract examined and held not merely to create a logging contract or right to take a particular kind or kinds of timber from the lands, but to vest the legal title to the timber, trees, or logs in the purchaser.

2. *Same; Delay in Removal; Effect.*—Where the purchaser who obtains the legal title to growing timber delays its removal beyond the time fixed in the conveyance, his subsequent entry on the land for the purpose of removing it is a trespass.

3. *Same.*—A court of equity will not authorize a purchaser of standing timber to enter on the land for the purpose of removing said timber after the expiration of the time fixed for its removal by the conveyance, although he be willing to compensate the land owner for the damage done to the land, since the powers and processes of a court of chancery cannot be employed to sanction a legal wrong.

4. *Property; Real Estate; Standing Timber.*—Standing timber is real estate, a part of the land itself.

5. *Ejectment; Possession of Standing Timber.*—Ejectment is a proper remedy for the recovery of the possession of standing timber by the person entitled to its possession.

APPEAL from Mobile Chancery Court.

Heard before Hon. STEWART BROOKS, Special Chancellor.

Bill by the Mt. Vernon Lumber Company against Kate T. Shepard and others to enforce certain rights in standing timber and to determine the damages to the land on account of its removal. From a decree sustaining demurrers to the bill complainant appeals. Affirmed.

The bill sets out the agreement noted in the opinion, alleges the payment of the notes and the fact that it entered and cut a portion of the timber and trees growing thereon, as it had a right to do, and further alleges that there is now growing on said land a large number of trees that were growing at the time of the sale, and were covered by the agreement heretofore set out, and are the property of the complainant. It is further alleged that complainant now desires to cut and remove the balance of the timber which was so conveyed to it, and which is still standing on the land, but that respondents object thereto, and complainant has written letters requesting permission and has received letters denying that permission, which letters were made an exhibit to the bill. It is further alleged that complainant does not desire to enter upon the land as a trespasser, or to do any injury to the land, but it does desire to enter and cut the timber belonging to it, and is now willing, and offers, to pay whatever the reasonable damage to said land will be by reason of the cutting and removing of said timber. The complainant then propounds certain interrogatories, and prays that the respondents be required to answer the same, and that it be granted the right to enter, and cut the timber belonging to it, and that inquiry be made to determine the damages to said land, and for general relief. The con-

veyance was executed April 19, 1901. The bill was filed October 19, 1911.

The demurrers are that the bill was without equity, and complainant has a full and adequate remedy at law, and because the instruments, when properly construed, constitute merely a lease of said land, with the privilege of removing the logs and trees, for a period of five years from the date thereof, which has long since expired, and because it appears that the complainant has no right whatever to go upon said land for the removal of said timber, and this court has no power either to condemn said land or any right of way thereover, or to confer any such right on complainant, and other grounds not necessary to be here set out.

ERVIN & McALEER, for appellant. Parties who enter on land after expiration of the time limited by the deed to remove the timber are trespassers.—*Zimmerman v. Daffin,* 149 Ala. 381. The title to the timber still remains in the grantee, nevertheless.—*Zimmerman v. Daffin, supra.* Under these conditions the grantee has a right of way.—34 Cyc. 1767; 13 Amer. Dec. 741. Where the remedy at law is inadequate equity will supply one. —*Hall & Farley v. Ala. T. & I. Co.,* 56 South. 238. The facts in this case show an executed contract.—9 Cyc. 244; *Fullenwider v. Rowan,* 136 Ala. 303.

GREGORY L. & H. T. SMITH, for appellee. While ejectment is the legal remedy for the possession of real estate it cannot be employed here because there can be no such thing as possession of the trees in one and possession of the soil in another.—*Christopher v. Curtis Attalla Lumber Co.,* 57 South. 837. The appellant lost his title by the expiration of the term fixed for removing it.—*Zimmerman v. Daffin,* 149 Ala. 386. The contract

was a mere right to remove it and conveyed no title in
the trees not removed before the expiration of the time
fixed therein.—*Christopher v. Curtis Attalla Lumber
Co., supra.* Where a complainant has an adequate rem-
edy which has been available but which has been lost
either through positive negligence or mere failure to
assert it equity will not interpose to grant relief.—16
Cyc. 38. The case at bar is almost on all fours with
the case of *Inglis v. Freeman,* 137 Ala. 298, which de-
nied complainant the right of relief. There are also
many other cases holding directly that, when a license
for the removal of trees has once expired, the right of
removal is dead, and cannot be resusticated by a court
whose office it is to enforce, and not to confer, rights.—
*Morey v. Hoyt,* 19 L. R. A., p. 614; *Leader v. Home-
wood,* 5 C. B. U. S. 546; *Laughron v. Ross,* 45 N. Y. 792;
*Carlin v. Ritter,* 68 Mo. 478; *Dingley v. Buffum,* 57 Me.
381; *Torrey v. Burnett,* 38 N. J. L. 457; *Youngblood v.
Eubank,* 68 Ga. 630; *Haflick v. Stober,* 11 Ohio St. 482;
*Beers v. St. John,* 16 Conn. 322; *Burk v. Hollis,* 98
Mass. 35.

McCLELLAN, J.—On the 19th day of April, 1901,
Kate T. and Edward B. Shepard and the Mt. Vernon
Lumber Company, a corporation, executed an instru-
ment, attested by two witnesses, containing these words:
"That whereas said Kate T. Shepard and Edward
Bruce Shepard are the owners in fee of certain property
in Mobile county, Alabama, hereinafter more particu-
larly described, on which said land is now timber of
different kinds and qualities, and whereas said Mt.
Vernon Lumber Company desires to obtain all right,
title, and interest in and to such timber, for the purpose
of cutting, sawing, transferring and selling the same:
Now, therefore, for and in consideration of the cove-

nants and agreements to be performed by the said Mt. Vernon Lumber Company as hereinafter contained, the said Kate T. Shepard and Edward Bruce Shepard have bargained, sold, granted and conveyed, and by these presents do bargain, sell, grant and convey to the said second party all the timber, trees or logs of whatever kind or nature, now on or growing on the following described property, to wit," etc. Then follows a description of approximately 1,500 acres, in connection with which this exception is made: "Except pine and cypress timber thereon, unless as hereinafter provided." Provision is made that the right stated might be enjoyed for a lease of ten acres for five years, and for a conveyance in fee of three acres. It was also stipulated that the company might without charge "use such pine or other timber on said premises as it may need for the erection of such mills, buildings, houses, tramways and roads in connection with its said business." It was further provided: "And the said Kate T. Shepard and Edward Bruce Shepard further agree to grant to the said second party a right of way from the mill which it is to erect upon said premises over such premises toward the Southern Railway and agree to allow it full and free right of ingress and egress over to and from the above mentioned premises, the timber to be removed therefrom within five years from the date hereof."

The company engaged to erect its mill on the premises, with "all reasonable speed," and to have "the same ready for cutting and sawing timber by the 1st day of June, 1901," to give "its thirty-seven (37) promissory notes aggregating $7,500.00, 36 being for $200.00 each, and one being for $300.00, all dated April 19th, 1901, bearing interest at 6 per cent., the first one thereof to become due and payable on or before May 31st, 1901, and one to become due and payable on or

before the last day of each and every month thereafter until they shall have been all paid, and as security for the payment of said notes" the company granted, bargained, sold, and conveyed unto the Shepards all the timber on said lands, both standing and when cut into logs or timber or sawed into lumber, also all machinery, tools, appliances, and improvements upon said lands, subject, however, to a defined prior lien upon the machinery. The company engaged to cut 200,000 feet of lumber each and every month until all of said notes were paid in full, and "it may cut as much more as it may desire, but no logs, timber, or lumber shall be removed from said land or the millyard or sold or delivered to any person or corporation until said second party (the company) shall have paid to said first parties the stumpage thereon at the rate of $1.00 for each and every 1,000 feet of logs, timber or lumber cut or sawed and ready for delivery, and for each 1,000 feet so paid for the lien hereby declared is released as to that 1,000 feet, such stumpage being evidenced by said 37 promissory notes. It being further agreed that said second party shall pay at least one of said notes every month, and as many more as it may be able to pay. It being the intent of this contract that for every 200,000 feet of logs cut from said land there shall be due said parties of the first part one of said promissory notes, although the note by its terms may not be then payable, and the same must be then paid. If the said second party shall fail to cut as much as 200,000 feet any month he shall nevertheless pay the note or notes as they fall due, and in default of said second party paying said notes, or any one of them according to the terms of this contract, or shall attempt to remove any logs, timber, or lumber from the land without paying the stumpage due thereon, then said first parties may ter-

minate this contract at once, and may declare the whole debt evidenced by said notes due and payable at once, and proceed to enforce the payment thereof by taking possession of and selling the said logs, timber, or lumber on hand, and also all the other property covered by this lien, and, if said default continues for thirty days, then to proceed to sell at public or private sale for cash, and upon such notice as they may deem proper and apply the proceeds thereof, first, to the costs of taking possession and selling said property, * * * second, to the payment of said notes with interest, and, third, the surplus, if any, to be paid over to the said second parties."

The instrument concludes in these words: "And the said Kate T. Shepard and Edward Bruce Shepard agree in no wise to hinder or delay the said second party in shipping or delivering lumber or logs from the said premises, either by road, water, tramway, or railroad, provided they have paid their stumpage promptly according to the terms of this contract, and agree to pay all taxes of whatever kind or nature which may be levied on said land or timber excepting mill site and mill; and they further agree to protect and save said second party harmless and safe from any interference in the cutting or possession of such timber, logs, or lumber by any persons holding a title paramount to that of said first parties, hereby further expressly warranting the title of such lands and timber to be in themselves and free from any and all liens or incumbrances whatsoever."

All the notes were paid before, and the lien provided formally discharged on, October 6, 1902. From the entire instrument it must be concluded that the intent of the parties and the legal effect of the instrument was to vest, in presenti, in the company the legal title to

the defined "timber, trees, or logs" on or growing upon the lands described on April 19, 1901. It did not create a logging contract, or a mere right to take a particular kind or kinds of timber from the area described. Those features of the instrument, establishing, in any event, the methods of payment, evince no purpose of the parties to qualify the unmistakable, apt terms in which the intent to convey in presenti was anteriorly expressed.

It has been long since finally settled in this state that standing timber is a part of the realty, and that eject-ment is an appropriate remedy to recover its posses-sion.—*Heflin v. Bingham*, 56 Ala. 566, 574, 28 Am. Rep. 776; *Milliken v. Faulk*, 111 Ala. 660, 20 South. 594; *Harrell v. Mason*, 170 Ala. 282, 54 South. 105, Ann. Cas. 1912D, 585; *Rothschild v. Bay City Co.*, 139 Ala. 571, 36 South. 785; *Zimmerman Mfg. Co. v. Daffin*, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; *Magnetic Ore Co. v. Marbury Lumber Co.*, 104 Ala. 465, 16 South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73; *Inglis v. Freemen*, 137 Ala. 298, 300, 34 South. 394; *Christopher v. Curtis Lumber Co.*, 175 Ala. 484, 57 South. 841.

It is also settled here that where the title to growing timber is conveyed, and the grantee delays beyond the period fixed in the instrument within which he may remove his timber, or, if no such limitation is fixed in the instrument, he delays beyond a reasonable time to remove his timber, he is guilty of a trespass in entering the land for the purpose of removing his timber.—*Zim-merman Mfg. Co. v. Daffin*, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; s. c., 158 Ala. 637; *Goodson v. Stewart*, 154 Ala. 660, 46 South. 239; *Magnetic Ore v. Marbury Lumber Co., supra.*

The bill in this instance would invoke aid of a court of equity to enable it (appellant) to enter upon the

lands of the grantors, and to remove the timber to which it has the legal title. The offer is made to compensate the defendants (grantors) for "whatever reasonable damage to said land" may result from the "cutting and removal of said timber."

As appears, the five years within which under the instrument of conveyance appellant was required to remove its timber expired before this bill was filed. To now, under any sanction, enter for the removal thereof, would be a trespass—a wrong. Equity's process and powers cannot be so employed.

The demurrer was properly sustained.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.