(77 South. 364)

C. W. ZIMMERMAN MFG. CO. v. WILSON.
(1 Div. 15.)

(Supreme Court of Alabama. Dec. 20, 1917.)

1. QUIETING TITLE ⊗⇒44(4)—PROOF OF TITLE —SUFFICIENCY—PLEADING.

In an action to quiet title, where title of plaintiff was formally denied, but defendant also disclaimed title except as to timber on the land, and the evidence showed that the ownership was from a common source and in the two parties, plaintiff's allegation of ownership was sufficiently shown.

2. QUIETING TITLE ⊗⇒44(4) — POSSESSION — PROOF.

In an action to quiet title, where there is no real dispute as to possession by the plaintiff, the evidence does not have to be as full and specific as otherwise.

3. EQUITY ⊗⇒56—MAXIMS—FORMAL MATTERS.

Equity looks through mere forms and shadows to the real and substantial equities of the controversy.

4. QUIETING TITLE ⊗⇒44(3)—TIMBER RIGHTS —EVIDENCE OF OWNERSHIP.

In an action to quiet title, evidence held not to warrant a finding that there was no timber remaining on the land belonging to defendant by conveyance from a common source.

5. LOGS AND LOGGING ⊗⇒3(10) — SALE OF STANDING TIMBER—WHAT PASSES.

A conveyance of standing timber passes only timber then existing and growth of such timber.

Appeal from Circuit Court, Clarke County; Ben D. Turner, Judge.

Bill in equity to quiet title by D. C. Wilson against the C. W. Zimmerman Manufacturing Company. Decree for plaintiff, and defendant appeals. Affirmed in part, and reversed in part.

T. J. Bedsole, of Grove Hill, for appellant. F. E. Poole, of Grove Hill, for appellee.

MAYFIELD, J. Appellee filed the bill in this case to quiet and determine title to lands described. The bill alleged that complainant had title, and that he was in the actual possession. It is insisted by appellant that these two material allegations were denied in the answer, and that neither was supported by proof, and that, as these were both made jurisdictional facts, complainant of necessity failed, and his bill should have been dismissed.

[1] If appellant's premises be conceded, or be found to be true, its conclusion is correct, and the result necessarily follows, nothing further appearing. We do not find, however, that the premises are wholly true in legal effect, though at first reading of the pleadings and proof they do appear to be true. In the first place, the paragraph of the bill which contains these allegations is denied, but only pro forma or perfunctorily, which, however, would be sufficient to put the burden of proof on complainant as to the allegations, if nothing further appeared in the answer or crossbill to change the effect of the denial. The very next paragraph of the answer, which follows the pro forma denial of these allegations as to complainant's ownership and

---

⊗⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

possession, sets forth respondent's claim of title, in compliance with the. requirement of the bill; and this answer shows conclusively that respondent's sole claim of title is to certain pine timber or trees upon the land, and that it claims the timber by virtue of deeds or conveyances from one B. M. Norris, who is shown to be the common source of title through which both parties claim. This being true, neither party can dispute the title of the common source; and there was certainly evidence sufficient and conclusive to show that all the title the common source ever had passed to the parties to this suit, either by conveyances or by adverse possession, at least, the equitable title did, which is sufficient in a court of equity. As respondent disclaimed any title to the land, other than that to the timber, with the right to remove it, this allegation was sufficiently proven as to title.

[2] As to the allegation of possession, we find that it was also proven, not in terms, but in effect. The evidence on this phase is not as full and specific as it might be, but obviously this is so because there was no real dispute as to complainant's possession of the land, nor as to that of any party under whom he claimed title.

[3] Courts of equity properly look through mere forms and shadows to the real and substantial equities of the controversy. So viewing this record, we feel no hesitancy in finding that these two material and jurisdictional facts were sufficiently proven.

[4] We are of the opinion, however, that the trial judge erred in finding that the respondent had no title or interest in any of the timber on the lands in question. While most of the witnesses did on the examination in chief testify that there was not, at the time of the suit, any timber or trees on the land which was embraced in, or conveyed by, the deed through which respondent claims title, yet on cross-examination of all of these witnesses, including the complainant himself, it was shown that there was some. timber or trees then on the land, which would have passed, and that the title thereto did actually pass to the respondent, by deeds which are not questioned. The description of the timber in the deeds in question is as follows:

"All the pine timber now standing and being on the following described lands"—with the indication of such lands by government numbers.

The original owner testified as follows as to the timber then on the land:

"There is some short straw sap stuff on this land that was on it when I sold it. I was on the south end of this land yesterday, but there was no long leaf on it. There are at least 40 acres of timber on this land that was on it when I sold to Zimmerman. They cut the long leaf stuff out. This is not a solid block of 40 acres, but this will amount to 40 acres, all told."

On redirect he testified:

"On this 40 acres of timber above referred to, there might have been a few trees large enough to make lumber 18 or 20 years ago, but the great majority of it was not large enough to be merchantable."

Another witness testified:

"The short lead [leaf?] pine is there now that was on that land in 1899."

Another stated as follows:

"There is some small short leaf pine timber on this land now. Some of it is on it that was on it as far back as I remember it—13 years."

There was much other evidence to the same effect, which the trial judge must have overlooked.

We feel certain that there were, at the filing of the bill and at the time of trial, some trees and timber on the land in question which passed to respondent, and which, under the law as declared in the Zimmerman Case, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, belonging to respondent according to the undisputed evidence in this case. The conveyance of the timber in this case is almost identical with that construed in the case of Zimmerman v. Daffin, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58. In fact we suspect that the forms of both deeds were the same, as the deeds were made near the same time, and to the same grantee, except that in the one case the grantee was a partnership, and in the other (later), it was the succeeding corporation.

There is, however, another difference between the two deeds, and a difference that must be considered. In the deed heretofore construed the period in which the timber should be removed was fixed at and limited to two years; whereas in this case the time in which the removal must be made is left blank. The clause now in question is as follows:

"The said C. W. Zimmerman & Co. is allowed —— years from this date within which to cut and remove the timber hereinabove conveyed."

The date referred to is the 14th day of June, 1899. In the Zimmerman Case, after reviewing many conflicting decisions on the time limit for removing the timber, the opinion concludes:

"A fair résumé of the holding in the case is that, when standing timber is sold and conveyed and no time fixed for the removal of the timber, the purchaser has a reasonable time within which to enter and cut the timber and remove it, and if he fails to act within a reasonable time, he thereby forfeits the right to enter the premises, and would be liable in an action quare clausum, but would not be liable de bonis or for the conversion of the timber." 149 Ala. 387, 42 South. 860, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58.

Has the grantee had a reasonable time in which to remove this timber? Has it lost its right to remove that which now remains on the land? Has it lost its right to enter on the land for the purpose of removing the timber? These questions were not litigated nor decided by the court below; and as there may be other evidence to show the existence or nonexistence of the right to now enter and remove the timber, we deem it proper to pretermit here a decision of the question,

but will reverse and remand, that the parties may take evidence on this feature of the case if they see fit so to do. It is not proper to now decide as to what is a reasonable time in which to remove. We merely refer to what we have heretofore said on the subject:

"Where, as here, there is no stipulation with respect to time within which entry shall be made and the timber removed, the law implies a reasonable time during which such entry and removal shall be effected; else it is lost, forfeited. Goodson v. Stewart, supra [154 Ala. 660, 46 South. 239], and Magnetic Ore Co. v. Marbury Lumber Co., 104 Ala. 465, 16 South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73, among others. We have held that 51 years is not a reasonable time within which entry and removal, in such case, could be effected. Taking the prescriptive period of 20 years as a maximum measure in such cases, but not affirming at this time that a less period of entire inaction will not likewise result, we hold that 20 years is an unreasonable time beyond which the stated right of entry and removal cannot exist cannot be recognized. We are not to be understood, however, as pronouncing, after the elapsing of any period, however great, the forfeiture of the title to timber of him in whom it became or becomes vested. In short, the doctrine, in this regard, of Magnetic Ore Co. v. Marbury Lumber Co., 104 Ala. 465 [16 South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73], is reaffirmed." Ward et al. v. Moore, 180 Ala. 405, 406, 61 South. 303, 304.

[5] It also appears that there is now on the land timber which would not, and did not, pass by the conveyance of the timber, though, if the same conveyance were made of this date, such timber would pass. To such timber the grantee, or those claiming under it, of course, have no right or title. The conveyance of the timber, so far as passing title, operated in præsenti, and not in futuro. While, of course, the grantee would be entitled to the growth of the trees until they were removed in accordance with the conveyance, it would not be entitled to any timber not included in this description when the conveyance was executed. Conveyances like the one in question have been generally, if not universally, construed not to pass to the grantee a right to grow timber upon the land, further than the natural growth of that title to which did pass at the time of the conveyance. The timber on the land when the conveyance is executed, title to which does not pass by the conveyance, and that which grows on it thereafter (with the exception before stated), belongs to the grantor, and not to the grantee; that is, to the owner of the land, and not to the grantee of the timber. If it should result that the grantee owns timber, but has no right to remove it, and that the grantor owns the land and has the right to remove the grantee's timber therefrom, but not the right to use the timber, the condition would be anomalous; but it would be one which was foreshadowed in the Zimmerman Case, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, and to which reference has been frequently made by this and other courts. This condition was thus forecast in the pioneer case:

"If the limitation as to time of cutting and removal should be construed as a covenant on the part of the purchaser that it would cut and remove the timber in the time specified, the title to the timber would remain in the purchaser after the time limited had expired, and he could still enter upon the premises and remove the same at his pleasure, being liable to the vendor for such damages as he should cause in so doing. The vendor would also have a right of action against the vendee for a breach of the covenant in not performing the covenant as agreed; or it may be that the vendor would be entitled to remove the timber after the time limit himself, but not to appropriate it to his own use." 149 Ala. 389, 42 South. 861, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58.

In the case of Mt. Vernon Lumber Co. v. Shepard, 180 Ala. 148, 60 South. 825, the rule is stated and the authorities are cited, the opinion concluding as follows:

"The offer is made to compensate the defendants [grantors] for 'whatever reasonable damage to said land' may result from the 'cutting and removal of said timber.'

"As appears, the five years within which under the instrument of conveyance appellant was required to remove its timber expired before this bill was filed. To now, under any sanction, enter for the removal thereof, would be a trespass—a wrong. Equity's process, and powers cannot be so employed."

In the case of Christopher et al. v. Curtis Co., 175 Ala. 484, 490, 57 South. 837, 839, it is said:

"A sale of growing timber may pass the legal title to the purchaser; but, without more, it passes no interest in the soil generally, and confers no right of possession that can be exclusive of the general owner's possession. The right to take possession of such timber can be executed only by entering upon the land and severing·it from the soil; and until this is done the actual possession of the timber, undelivered as yet, remains in the general owner in possession of the land, as the quasi bailee of the owner of the timber. This, it seems to us, belongs to the category of self-evident truths, which need no demonstration."

The Mt. Vernon Co.-Shepard Case, supra, has been here several times on appeal. The deliverances of this court on these appeals reviewed the cases; and what was said therein may be of interest and service in the further prosecution of this suit. See 180 Ala. 148, 60 South. 825, and 190 Ala. 574, 67 South. 286.

It results that the decree of the chancellor, so far as it decreed that the respondent had no interest or title in or to any of the pine timber upon the land in question, is reversed, but that, in so far as it decreed that respondent had no interest in the land other than that in the timber, it is affirmed. Whether the respondent yet has a right to remove the timber which he owns was not litigated in the court below, and was not there decided; and in order that this question may be litigated and decided in this suit, the decree will be affirmed in part and reversed in part, and the cause remanded.

The costs of this appeal will be taxed equally against the complainant and the respondent.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.